Mr. Francis, Mr. Ballon, Ballon, Ballon. Great, thank you. Whenever you're ready. Thank you, Your Honor, and good morning, Your Honors. May it please the Court, Jim Francis for the appellant, Bill Dominguez. I request three minutes for rebuttal. That's fine. We seek reversal of the District Court's March 20, 2014 order granting summary judgment to Yahoo. The District Court erred because it applied an erroneous and excessively narrow reading and definition of the term automatic telephone dialing system to the SMS service Yahoo used to send Mr. Dominguez over 27,000 texts, despite his repeated efforts to stop those texts and his disputes. Apparently they did say Sumi. Apparently they did say Sumi, Your Honor, yes. But the, could he have blocked, dumb question, could he have blocked Yahoo's number on his phone? It's a good question, Your Honor. That I'm not certain of. I don't know that that's part of the record. I know that what he did do was he tried what he had successfully been able to do in the past, which is hit stop or reply or help as a text in response, which works for most text messaging platforms that are run on the Mobile Marketing Association. Yeah, one of the amicus briefs does say that he could have blocked, but there doesn't appear to be anything in the record to that extent. There's no, nothing in the record that I'm aware of, Judge Sirica, to that effect. In essence, basically there is no fault on the part of Mr. Dominguez, which caused him to receive these calls. He was a completely innocent victim of, of bureaucracy or whatever. Is that a correct understanding on my part? Judge Roth, you're correct, but there's nothing on his part that was, was at fault at all. And he took as many steps as he could that he knew of to stop the problem. I don't know that it was bureaucracy that was the issue as much as a, a technology that was not compliant with the TCPA or the Mobile Marketing Association, which provides that they have to have a mechanism to allow these things to stop. You press reply or stop and it stops or unsubscribe. Your honors might see, even in emails that you get, similar context that you can hit unsubscribe or stop. That was not implemented at Yahoo for whatever reason. They could have implemented it. They didn't. That's in the record. But what happened here was that the district court looked at the term sequential number generator and defined that in a way to only include numerically ascending numbers rather than other types of sequences such as chronological sequences, alphabetical sequences. There is nothing in the plain reading of the statute or the statutory definitions which restricts sequential number generator to only that type of technology that sends numerically ascending digits. That is 111, 112, 113. Surely there is no question that that is an example of a sequential number generator, but it is not the only one. Could you address? How do we generate numbers here? I mean, I don't. Sorry, go ahead and answer. To answer your question, Judge Roth, the technology here actually generated the numbers and the text on its own. There was no human involved in doing, in that process. I think in terms of the generate question that your honor is asking. Well, the number was already in the system. When the previous subscriber asked for this common service, the number was put in the system and it was not thereafter generated, right? It was just. I'm sorry. Go ahead. Your honor, in terms of what generation means under the statute, there is no definition of generate. So you look at the dictionary definition which is simply to produce. In this regard, their system produced the number. After, your honor is correct, that originally a user signed up for and elected to this service. Thereafter, those numbers were stored. Thereafter, the text and the numbers were generated by the system. I think what your honor is asking, which is a great question, is in terms of generate, does the system have to generate the number from scratch or out of thin air? The answer is no. In fact, if it did, if that requirement were applied, none of the cases that we have cited or that are before the court would be ATDS cases, right? Engager, your honor knows because you were on that panel, Engager, the number was not created by the system. It was input. It came from the consumer's application to Dell. In the Stirk case, it came from the consumer's contacts. All of the technology today that sends texts uses numbers that come from either a list or come from some other source. They're not creating numbers out of thin air. Let me ask you this about Judge Bailson's opinion. He says that Mr. Snyder added to the statutory definition the phrase, or from a list of telephone numbers, and that that was an improper way of defining the statutory section. Tell me why that's wrong. Why it's wrong is because in Mr. Snyder's declaration, he doesn't say that's the statutory definition. He does use that as a standing, as the state of the law, because what he's relying on is the FCC's rules and regulations and the guidance over the last ten years in which the FCC has repeatedly held that devices that call from a list, as opposed to creating numbers out of thin air, are covered as ATDS systems. But are they predictive systems there? A predictive system is an example of a system that dials from a list, but it's not the only version of a system that dials from a list. So the FCC orders or statements are definitive with respect to this particular case? They are to the extent that the FCC has repeatedly held, in looking at it in predictive dialers, that the operative question is whether or not the system has the capacity to dial, or in this case text, without human intervention. That is clear from what the FCC has said. It did not restrict that reasoning just to predictive dialers. Could you address the jurisdiction question? That is, whether the district court had jurisdiction to consider whether the FCC's regulation properly interpreted the act? Yes, Your Honor. As I think we outlined in our brief, our position is that under the Hobbs Act, or the Administrative Orders Act, the district court was not permitted to disregard the FCC rules and regulations in this matter. That that is something only this court can do. Now when you look at the regulation then, the regulation talks about ATDS, and the FCC determines ATDS and auto dialer mean equipment, which has the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers. Then you have the preamble, which goes more broadly than that, which is the capacity to dial numbers without human intervention. The preamble obviously helps you. It is a little more complicated than that. Could we take the preamble into account here? Yes, Your Honor. But I would also, I think it is clear from our position that we believe that even on the plain reading, we are covered. Because if you just apply the dictionary definitions, and in this case, this is why it is important that this court looks at the FCC. The term sequential number generator, sequence and number and generator are not defined in the preamble. So the FCC was able to define that, and gave it the power also to look at evolving technology. Because the reality is, the technology that is being used today So that is why you had the 2008 clarification? Yes, Your Honor. Because that is very clear if you look at the congressional record, that Congress wanted the FCC to address and deal with future technologies. The technology that is being used today to send texts, obviously is very different than what was it I guess this originally came out, what, you had robocalls with regard to political campaigns? Well, I think it came from any type of solicitation harassment that people were getting phone calls. But now, texting is a much larger medium than was in place before. Yes, I know it well. It is the only way my kids respond to me. Send them an email two days later. You call them two days later. Text 30 seconds later. My kids are fairly young, Your Honor. I already have that problem. You will be there. So, but I would ask the court respectfully to look at the purpose of the statute. Why was it passed? It was designed to prevent harassment by an automated system. That is what happened here. This man At the same time, isn't it perfectly easy if Congress wants it to say that ATDs, ADTs will include calls that are dialed without any human intervention? Just to make it clear. And they haven't. So the fact that they haven't done that, isn't it easy for us to simply say, well, this is not within the parameters of the statute? I don't think so, Your Honor. Because, as I said before, even if the FCC didn't exist and didn't promulgate any rules and regulations, the evidence here shows a system that falls within the plain reading of the statute. This was a system that generated the numbers to be texted. There is no question about that. But for this system, those emails would have come in and just stopped. So what causes the number to be texted? What caused the number to be texted was Yahoo's technology that looked at its system, had filters, used internal servers, and it was run by a software program. They admit, and there is a little question here, that it created the numbers. One database asked the other database for the number. That database, the UDB database at Yahoo, produced the number to the SMS gateway, or the SMS subscription gateway. Thereafter, the SMS subscription gateway took the number, created the text from the email. Remember, this is not just a forwarding system. It's creating the text, 140-character text of its own. That's not what the email was. It's based on the email, but that's not what the email was. And then it has a program by which it determines the sequence, which is largely chronological. And I would ask this court to go back to the dictionary. Sequential means, Webster's New World Dictionary, the following of one thing after another in chronological, causal, or logical order. That is exactly what happened here. The district court, for whatever reason, wanted to only consider numerically ascending sequences, but that is not what the dictionary in the plain reading, or the plain definition of sequence is. So either, this court can reverse, either on the basis of the plain reading, or upon the FCC. Either way, this system is exactly the type of thing that Congress meant to regulate. An automated harassing system that can't be stopped by texting back to Yahoo. It can't be stopped by calls to Yahoo. It can't be stopped by calls to the FCC. It can't be stopped by FCC calls to Yahoo. It cannot be stopped. This is precisely the type of automated harassment that was meant to be covered. Why don't we hear from Mr. Ballin, and we'll get you back on rebuttal. Thank you, Your Honor. Thank you. Good morning. May it please the Court, Ian Ballin for Defendant Yahoo. Your Honors, this is a case that actually involves very narrow facts. The plaintiff has talked about 27,000 messages about Yahoo saying sue me, about the FCC intervening. None of that is actually in the record. This is a summary judgment motion that was focused very narrowly on ATDS. It is undisputed, the facts are undisputed, that the Yahoo system cannot generate numbers at all. So the only way the plaintiffs can win and have this case reversed is if this Court is inclined to expand the statutory definition. Working backwards, what if you have a preamble that says the capacity to dial numbers without human intervention, and it is a gloss on the regulation, and it's how the FCC interprets the statute? Well, first of all, I think it's very clear if you look at the CFR definition that the preamble didn't make it into the definition. If you look at 47 CFR section 64.1200 subsection F2, the only definition is the terms automatic telephone dialing system and auto dialer mean equipment, which is the capacity. Yes, but there was a report in order preceding the final rule by three weeks, and the FCC concluded that ATDS, this is our devices with, quote, the capacity to dial numbers without human intervention. In the context of the 2003 order, which dealt only with predictive dialers. Now, in this case, it is undisputed. What about the 2008 clarification? The 2008 clarification, again, also only dealt with predictive dialers. The FCC has never applied these rulings outside of the predictive dialer context, and in this case, it is undisputed. The plaintiff's expert testified that this technology is not a predictive dialer, and actually, plaintiff's expert went further. He testified that there's no such thing as predictive dialing in text. It's comparing apples and oranges. Well, the clarification in 08 does say, as I understand it, two things. One, correct, predictive dialers are ATDS, and they are so even though you call numbers from lists of discrete identified numbers rather than randomly, but, and three, that the touchstone, the key thing for the ATDS is the capacity to dial numbers without human intervention. It keeps coming back. If that's correct, this is without human intervention? Well, actually, I would dispute that because, actually, the messages in this case are not sent without human intervention. Well, the person who receives the notice of the text who doesn't want the notice of the text, he's not doing anything. Well, well, the, originally, the person who had the phone number had to manually But that person no longer has the phone number. We're dealing with Mr. Dominguez who never asked for the service, never did anything to get the service. He doesn't want the service. He doesn't want the service. How has he participated at all? No, you're absolutely correct. There's no question. The number was reassigned. He did not participate. He had a simple remedy, and that's actually in the record. Plaintiff's Snyder conceded that his simple remedy was to go back to T-Mobile and ask for reassignment of his phone number, which is what people do every day. Is that a simple solution? Yes. A lot of people have my phone number, and if I want to, if I ask to have it reassigned, that's a big pain in the neck for me. Is T-Mobile going to say, all right, yes, give me a list of everyone who has your number, and we will notify them all? No, Your Honor, but in this case All right, so it's a big hassle. Why should he have to go through this big hassle when it's your fault and not his fault? Well, actually, in this case, the plaintiffs allege that these texts started on day one when the plaintiff got the phone. So, yes, it would be a big hassle if today any of us had to change longstanding numbers, but when you get a new phone number from T-Mobile, you can get it reassigned right away if the problem arises. But I understand your point, and certainly Mr. Dominguez did not want to receive these, but it's also not Yahoo apparently didn't understand the point. Pardon me? I say Yahoo did not understand the point. Yahoo was not informed. Again, there's no evidence. The plaintiff has alleged that it contacted Yahoo. Yahoo has no evidence that it was ever contacted. The plaintiff has also alleged Wait a minute. The FCC with Mr. Dominguez did Right. Yahoo has no evidence that that ever happened. But the FCC does, do they not? Not in this case. This is an allegation The complaint was, or claim was, that Mr. Dominguez got an FCC representative on the phone with him to call Yahoo, and they couldn't get it resolved. You're telling me that you don't know that's There's no evidence of that in the case. The plaintiff has made that Are you disputing that? Yes. The plaintiff has made that allegation. We never got to that issue because the summary judgment motion was focused very narrowly on whether this auto-forwarding technology was an ATVS. So I understand the plaintiffs have those allegations. We have not found any evidence of it. The plaintiffs have not put any evidence forward. It is simply the plaintiff's allegation. And because it was not actually material to the summary judgment motion, that never came up. And so again, from Yahoo's perspective, that didn't happen. But I understand that's the plaintiff's allegation in the case. Excuse me. With respect to human intervention The problem that I have, let's just say we rule for you. If we did, it would appear that the consequences that you're asking that we would be invalidating an FCC regulation that interprets a statute. And I'm not sure that we should, can we do that? I'm not asking you to invalidate a statute. You're saying that it doesn't fit within the definition of the regulation? Absolutely. And under the Hobbs Act, there is no question that any court can determine whether the regulation applies. If the FCC actually was going to change the statutory definition of ATVS, which is a very significant thing, to change the definition in the statute, that would be reflected in the CFR. What we are looking at is three paragraphs out of 225 paragraphs, or a few pages out of a 125-page report that dealt with a panoply of issues. And these few paragraphs deal specifically with predictive dialers. In this case, there's no question it's not a predictive dialer. The FCC has never said, the FCC has never ruled that their ruling on predictive dialers applies to text. There is no FCC order. So if you affirm, you are not in any way invalidating the FCC. To extend the predictive dialer order to text, someone would need either an act of Congress or a specific rulemaking authority of the FCC. Come back and deal with Mr. Francis's point about you don't have to get to the preamble, that this is a sequential number generator by definition. There's no evidence in the record. There's no dispute. No, he's talking about the definition of sequential number generator, and he thinks that that's what happened here. Why don't you address that, if you would. Certainly, Your Honor. It's actually undisputed there's no generation of numbers at all. To get to Mr. Francis's point, he's relying on Mr. Snyder's definition of sequential meaning not simultaneous. The problem with that definition, as Mr. Snyder freely admitted, is there is no known technology in existence in the United States today that would not send text messages based on this definition. If you define sequential in the way that Mr. Snyder asks, first of all, he testified, that would also encompass random, meaning that you'd have to read the statute as having a redundant term. Random and sequential, you read sequential to include random, the term is superfluous. But it would mean every mobile device, every single mobile device in the country, and Mr. Snyder admitted that. Under that definition, if I send a text message to co-counsel and his phone has changed and he hasn't told me, then I have strict liability under this statute for statutory damages, because he changed his number, he didn't tell me, and I sent a text message. I think the claim here is not so much that it was the first time or the second time, but it was the umpteenth time that it happened, and Yahoo didn't take care of it, at least according to what he has said, even when he got an FCC representative to make the call with him. Now, again, you say that's not in the record, but it's a person who's getting these notifications thousands of times. Your Honor. With regard to somebody else's text. Your Honor, the only thing in the record is seven messages. I understand the allegation is tens of thousands. The only thing actually introduced in the record are seven text messages. And, yes, certainly, absolutely. Our contention is if Mr. Dominguez had actually contacted Yahoo and provided the phone number, because, again, otherwise Yahoo would not have a way to do it, they could have done this. But these are facts that were never developed. Could have done what? I mean, it could have blocked it, which is also what he could have done based on his own technology. But these facts were never developed in the record because the case. Okay, but they are the facts in the complaint. And are they facts of automatic dialing of that human intervention, as pled, that should lead us to give further examination, further review to this case, to take jurisdiction, to develop it, to see if these indeed are the facts. Is this the type of abusive dialing that the statute was meant to abolish? No, Your Honor, because it is not without human intervention. It's undisputed in this case that none of the messages would have gone to Mr. Dominguez unless some third party sent an e-mail message to the e-mail account that was linked to the phone number. So because the prior owner linked his e-mail account to this phone number, Mr. Dominguez would not have received even one message unless a third person, a human being, sent an e-mail to that e-mail message, at which point it was automatically forwarded. Now, Mr. Francis says- But that e-mail would not have gotten from Yahoo to Mr. Dominguez but for the Yahoo system of automatic dialing without human intervention. So we're going a step beyond the human intervention and now have an automatic dialing without human intervention. I don't think that's what human intervention can mean because any system using software has an automatic feature to it. And if human intervention would preclude any kind of automatic feature, then the FCC would be saying that every text message, regardless of how it's sent, would come within the scope of the statute and the only kind of text message that would be excluded is if someone handwrites something on a piece of paper and delivers it by messenger. That can't be the case. There was a human being that had to send an initial message to the e-mail account linked to Mr. Dominguez's phone. You're focusing on human, but what about the intervention? I don't understand how that's an intervention. Somebody gets a text and then the notification goes to this particular number and somehow Yahoo's unable to disable this number from getting the notifications of text to someone else. This is part of the problem of trying to divine terms that were not defined from a footnote in a particular FCC report dealing with consent or from something specifically dealing with predictive dialers. This is the problem. If the FCC actually meant to change the definition, it would have provided this kind of context, and otherwise we're trying to read tea leaves to see what was meant in a footnote. The case is here, so we've got to decide it. Does this fit within the way the FCC interprets ATDSs? I don't think so because what the FCC said is that a predictive dialer that otherwise meets the requirements of the statute because it has the capacity to generate numbers randomly or sequentially does not cease to be an ATDS simply because those features are turned off and it actually, in fact, dials from a list of numbers. That's what the FCC ruled in 2003. And in the footnote in 2008 when the FCC refers back to the 2003 order, if you look carefully at the language, it says a system that has such capacity. The such capacity is the capacity to dial numbers randomly or sequentially. If the FCC had purported to change the statutory definition, it would have done so. It didn't. It was dealing with a predictive dialer technology. Okay, it was dealing with predictive dialers. We are dealing with predictive dialers. Right. We're dealing with another problem which has generated automatic dialing to people who don't want to get it without any human intervention in this dialing from Yahoo to Mr. Dominguez. And I don't worry about how they define predictive dialers because, as you said, and as we understand, this is not a predictive dialer, but is this a type of automatic dialing system without human intervention which is covered by the statute? I don't believe so, and I think it stretches the FCC ruling to the breaking point. First of all, this is a very unusual circumstance. This is not a service that people don't want. This is actually a free service that people do want. Well, Mr. Dominguez did not want it, and we're dealing with that. And don't tell us what 50,000 other people want. We're dealing with this case. We don't give advisory opinions. You're absolutely right, Your Honor. But what I'm saying is this is a very unusual circumstance. This is not a widespread problem. This is a problem of an individual who had a reassigned phone number. And that's where, you know, the problem arises. But the thing is to erase, you know, you raise a red flag when you say that Dominguez had a remedy, which was to change his number. Are you saying that the Yahoo system has the capacity to block these texts if it were notified? I mean, that's an interesting question that, again, we didn't get into because we were. I'm asking you. Yeah, what do you know about that? I mean, to my knowledge, that if the number was provided, then it would be possible. The problem is that the numbers are based on Yahoo accounts. Yahoo did not anticipate this type of problem ever arising because it's a free service that people sign up for. They had not anticipated the problem of someone changing their phone number and for whatever reason not then also changing the auto-forwarding feature. You know, this is a situation where perhaps someone died. Mr. Dominguez didn't have to change an auto-forwarding feature. You keep trying to put responsibility on him for not doing anything. What responsibility did he have to change that? No, no, you're absolutely right. He had no responsibility. I'm saying he did have a simple remedy, which even Plaintiff's expert acknowledged, which is on the day this started, which was the day he got his phone, he could have, as millions of people have done in America, simply asked for a new phone because he'd been assigned a bad phone number by T-Mobile. All we're saying is we're sympathetic to Mr. Dominguez, but it's not really Yahoo's fault. But the next person who gets that number is going to have the same problem. It may not just be as committed as Mr. Dominguez is to righting the problem. If you believe what was said, I mean, he got extremely frustrated. Yes. And to the point where he ultimately sued. And just to pass the buck down the way doesn't seem to be the right answer because the next person, Smith or Jones, is going to have the same problem Mr. Dominguez does if that person gets that number. I agree completely. This is a problem, though, that Yahoo hadn't anticipated. It's a problem that Congress hadn't anticipated. And perhaps there's a need to amend the statute. I believe there is a petition pending at the FCC asking for guidance on the issue of reassigned phone numbers in the context of predictive dialing. You may be right, but at this point what we have is a regulation. Well, we have a CFR regulation which very clearly tracks the statute and does not talk about human intervention. The preamble does. The preamble of the CFR or the preamble of the 2003 order? Well, the preamble that exists with regard to what is the 2003 order? It's the 2003 order. It's not the CFR. The CFR, and again, that's why I believe we're reading too much into straight text. Look, there may be very good policy arguments why Congress or the FCC should issue a different ruling. And certainly a company like Yahoo, which did not anticipate this problem, has learned a lot about its system from this problem. Indeed, the service isn't offered anymore. But for purposes of this case, I don't believe that the court can rewrite the statute and a preamble in a 2003 order dealing with predictive dialers that didn't carry over to the actual rule from the FCC. I think you're missing my point. We're not trying to rewrite the statute. We're trying to see if what exists here fits within to what is noted in the regulation, which is the FCC's interpretation of its authority under the statute. Yes, Your Honor, but it didn't carry over to the CFR. 47 CFR section 64-1200 subpart F2. The definition of ATBS was not changed. And for something this important, if the FCC truly believed that this language in the preamble How does that help you? Because if the preamble says that it is the capacity to dial numbers without human intervention, that hasn't changed. But that was addressing a very specific context, which was a predictive dialer that had the latent capacity to generate numbers randomly or sequentially turned off. And so what the FCC said was if you have a technology that is an ATBS and it's rejiggered so that it cannot generate numbers randomly or sequentially, but it's got that capacity and it's turned off, but it actually dials numbers from a database of numbers, then it's still an ATBS. It dealt with latent capacity. There's no latent capacity in this case. And therefore, it's reading that too broadly. The FCC has never said human intervention without the requirements of the statute is sufficient. Indeed, in the footnote in 2008, the FCC is very clear in saying a system that has the requisite capacity. The requisite capacity is what's defined in the statute and what's defined in the CFR. All right. Thank you very much. Thank you very much, Your Honors. Thank you. Mr. Francis, if you would address the point that your opposing counsel makes that someone, the prior owners, set up something or someone initiated a text, and even though Mr. Dominguez doesn't want to get notification of this other person's text, that that is, quote, human intervention. We disagree strongly. The invention of the text was Yahoo only. The person who sent the message did not create a text. They did not send a text. They sent an email to somebody who had subscribed at some point to the system. Yahoo alone created the text that was sent and that was generated and sent in a sequential manner to Mr. Dominguez's phone. And I think what's important here, Judge, is to look at what the district court admitted. The district court agreed that there was an automatic telephone number generated as a number on Mr. Dominguez's cell phone, and that was done automatically. That's what the district court admitted at oral argument. The district court agreed with me that Yahoo's system sent numbers sequentially. That's in the record, 921. District court agreed that there was no human intervention and that Yahoo's system sent text messages to those numbers without human intervention. That's actually the opinion. That's at A9. So Mr. Ballin is just simply arguing a record that's not here. He's arguing something else. He keeps saying that it's undisputed that this system does not have the capacity to generate numbers. But even the district court agreed that it did. One other significant point he made was that the preamble is the preamble to the rule but is not in the CFR. But it's repeated later. It's repeated in the 2008 ruling. The clarification? Yeah, the 2008 ruling clarification. And it's very clear that, I mean, the SEC repeats it again, that the question and the hallmark of an ATDS, the essence of an ATDS, is the capacity to dial without human intervention. And to the extent that we're arguing terms in the statute and we have questions about what those terms mean and what technology is meant to be covered, that is why the FCC, that's why Congress delegated the FTC to make these rules, because technology changes. It changes every six months, every year, ten years, every 20 years. So it's important and essential. Congress knew that because technology changed it's important for this court to look at what the FCC has to say. And the FCC continues to go back and say this is the essence of what an ATDS is. A couple other points that I think really need to be made in rebuttal. Number one is Mr. Bowne says there's nothing in the record about Mr. Dominguez's disputes. Well, that's untrue. I was going to ask you about that. That's untrue. There's a declaration from Mr. Dominguez, A207, and attached to that declaration are his FCC complaints. So it's just untrue that there's nothing in the record about his FCC disputes or complaints. And we find it a little bit off-putting that Yahoo would argue that there's no record that they've not had an opportunity to take his deposition about all these disputes that he made, but they moved for summary judgment within the first two weeks this case was in existence, or in the first month. And now all they wanted was summary judgment on ATDS, and that's what we briefed, and that's what the court ordered. So when they take his deposition, hopefully, they'll find out about all of his disputes and all of his calls and the FCC's calls to Yahoo. There's no tea-leaf reading that this court needs to do. In addition to the FCC, you have a lot of cases in front of you that we have cited in which other courts throughout the country have looked at these issues. Look at the Griffith decision, right, the Griffith court. And look at the Stirk case. I mean, there's a reason that Path, the defendant in the Stirk case, is Amici in this case, right, because if the district court's narrow application of sequential number generator to only a device that sends text to numbers in an ascending order is upheld, then they know they're out. They know that this court basically is invalidating the Stirk decision. There's case after case which has looked at this and has come to the same conclusion, which is that when you have an automatic system like this that can create harassment like this where there's no off switch, right, that's one of the essential features here. There's no off switch. There's no way to stop this. Why? Because there's no human being on the phone. There's nobody to say, hey, please stop. There's nobody there. It's just a machine sending text nonstop. That's clearly what was meant to be covered here. I'll give you 30 seconds to come up. Thank you, Your Honor. I would just ask the court to seriously consider the arguments that we have made and look at the implications of upholding the district court's decision. Because as I've said, and I don't mean to repeat myself, but it's a very important point, the technology here sending that would only cover technology which sends text to ascending numbers, it doesn't exist. No one uses that anymore. Because why? It's not effective. It's more effective to have a list or a targeted group of people who read a demographic. Or in the Satterfield case, there were 100,000 people that Simon and Schuster said, give me this list. And all the cases that we're looking at all involved a list. They weren't generated numbers out of thin air. Thank you. Thank you very much. Thank you to both counsel for well-presented arguments. And we'll take the matter under advisement. Thank you, Your Honor. And call our second case of this morning. Before you leave, Judge Sirica has asked if we could get a transcript of part of this oral argument, just split the cost. Yes, Your Honor. Thank you very much. You can confer with the clerk's office. Thank you.